UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICKY L. CALZO, | ) | CASE NO. 4:19CV00598 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| ANDREW M. SAUL, | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Vicky Calzo ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on July 24, 2019, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence because it improperly considered the opinions of the State agency psychological consultants, which resulted in a faulty Residual Functional Capacity ("RFC") finding. ECF Dkt. #14. For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's case in its entirety WITH PREJUDICE.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed a Title II application for a period of disability and DIB on September 16, 2015. ECF Dkt. #12 ("Tr.")[1] at 12, 80, 192. On September 17, 2015, Plaintiff protectively filed a Title XVI application for SSI. *Id.* at 12, 81, 194. In both of her applications, Plaintiff alleged disability beginning July 28, 2014 due to: social anxiety disorder; major depression recurrent moderate without psychosis; and nervous system is sensitive. *Id.* at 54-55,

---

[1] All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

1

67-68, 80-81, 192, 194. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 66, 79, 94, 108.

On June 20, 2016, Plaintiff requested an administrative hearing. Tr. at 144. On January 25, 2018, a hearing was held before an ALJ in which Plaintiff, with counsel present, and a vocational expert ("VE") testified. *Id.* at 28, 161. The ALJ issued his decision on April 12, 2018, finding Plaintiff not disabled and denying her applications for DIB and SSI. *Id.* at 9-22. Plaintiff requested a review of the hearing decision, and on January 16, 2019, the Appeals Council denied review. *Id.* at 1-4, 189-90. On March 18, 2019, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a merits brief on July 24, 2019 and Defendant filed a merits brief on October 7, 2019. ECF Dkt. #s 14, 17. Plaintiff filed a reply brief on November 4, 2019. ECF Dkt. #19.

## II.    **MEDICAL AND TESTIMONIAL EVIDENCE**

Plaintiff alleges that she was disabled due to anxiety, major depressive disorder, and a sensitive nervous system. Tr. at 218. She reported feeling nervous, anxious, tense, and angry. *Id.* at 231. She also indicated that she felt incompetent and intimidated, and she stated that she was bullied and tended to isolate herself from others. *Id.* at 229-30.

### A.    **Medical Records**

At the outset, the undersigned agrees with the ALJ that the record contains many handwritten treatment notes, which are at times illegible, and some documents are also upside down in the transcript. *See* tr. at 21. Treatment notes from January 2015, showed that Plaintiff was alert, pleasant, attentive, active, well-focused, and oriented as to place and time, but was angry and anxious. *Id.* at 291. Plaintiff was also "getting stronger" and was very eager for a gay relationship, with fear and pain being less important. *Id.* A treatment note in May 2015 indicated that Plaintiff "came out" as gay to one of her sisters and that it went very well. *Id.* at 293. She was also not depressed or anxious, but rather felt happy. *Id.* On October 8, 2015, Plaintiff's counselor, Nancy Sakmar, LPCC, completed a daily activities questionnaire and opined that Plaintiff would need breaks, rest, and would have poor attendance at work due to her anxiety. Tr. at 316.

On January 4, 2016, psychologist Kenneth Gruenfeld, Psy.D., examined Plaintiff and opined that she had unremarkable speech, appropriate affect, and unremarkable mental content, with no loosening association, grandiosity, hallucinations, delusions or paranoia. Tr. at 326-27. She did not appear nervous or anxious and was oriented to person, place, and time. *Id.* at 327. Dr. Gruenfeld further opined that Plaintiff had good concentration and memory recall, as well as normal insight and judgment. *Id.* He noted that Plaintiff stated that she never had problems with co-workers and did not indicate that anger or aggression was a symptom of her depression. *Id.* at 328. Dr. Gruenfeld found her to be polite, respectful and that she should be able to effectively work with others. *Id.* He diagnosed her with major depressive disorder, moderate, recurrent, and anxiety disorder, not otherwise specified. *Id.*

On January 19, 2016, Dr. Karen Terry, Ph.D., reviewed the record on behalf of the state for Plaintiff's claim at the initial level. Tr. at 60-65, 73-77. Dr. Patricia Kirwin, Ph.D., reviewed the record at the reconsideration level on April 27, 2016. *Id.* at 88-92, 102-06. Dr. Terry opined that Plaintiff retained the ability to perform work in a solitary setting that did not require collaborative efforts with others for task completion; did not require her to interact with the general public; required no more than infrequent and superficial interaction with coworkers and supervisors; did not require her to work in close proximity to large groups of people; did not require her to have constant, direct over-the-shoulder supervision; and correction/criticism was to be presented in a constructive manner. *Id.* at 63, 76. Dr. Kirwin agreed, opining that same, except that she opined that Plaintiff retained the ability to work in a setting that did not require more than occasional (rather than "infrequent") and superficial interaction with coworkers and supervisors. *Id.* at 91-92, 105-06.

The record does not contain treatment notes from late 2015 to early May 2017. *See* tr. at 22 (ALJ noting lack of treatment notes for this time period); ECF Dkt. #17 at 3. At a mental status examination on May 9, 2017, Plaintiff's therapist indicated that she had severe anxiety and depression, was taking Paxil or a generic version of it, and opined that she cannot work due to anxiety and feeling bullied by coworkers in the past. Tr. at 342-43. Upon examination, Plaintiff had good insight and judgment, normal affect, clear speech, cooperative attitude, timid and fearful

3

behavior, and sad and irritable mood. *Id.* at 346. She also exhibited anxiety in the form of excessive worry, somatic complaints, and social apprehension. *Id.*

On May 24, 2017, Plaintiff reported that she spent time in an online virtual casino that has 70 members, attended an LGBT group where she socialized, and indicated that her fiancé drove her to the appointment. Tr. at 351. In August 2017, Plaintiff indicated that she was working on a book and a play, which she was submitting to a publishing company. *Id.* at 363. She also indicated that she was able to extinguish her fear of driving by driving to her treatment sessions. *Id.* at 365. In September 2017, Plaintiff reported video chatting with a female friend on Facebook and indicated she was interested in starting a relationship. *Id.* at 367. At a December 2017 visit to her therapist, Plaintiff was mildly depressed but in a good mood, and she reported she was finalizing her book. *Id.* at 392.

On October 25, 2017, psychiatric nurse practitioner Linda Boyle, CNP, completed a medical source statement. Tr. at 376-81. She opined that Plaintiff would be "seriously limited" (defined as having noticeable difficulty from 11 and 20 percent of the workday or work week) in six areas related to mental abilities and aptitudes needed to do unskilled work. *Id.* at 378. She further opined that Plaintiff would be absent more than four days per month. *Id.* at 380.

On January 29, 2018, psychologist Dr. John William Davis, Ph.D., reviewed interrogatories sent to him by the ALJ following the hearing. Tr. at 397, 404-09. Dr. Davis noted that he found "no fault" with Exhibit 1A, which was the disability determination at the initial level that included Dr. Terry's opinion. *Id.* at 405.

### B. **Hearing Testimony**

At the hearing before the ALJ, Plaintiff testified that she has a driver's license but does not drive due to her anxiety and not having a car. Tr. at 32. She stated that her last job ended due to anxiety, depression, and difficulty standing. *Id.* at 34-35. She is in counseling for her mental issues and sees her counselor every two weeks for one hour sessions. *Id.* at 36. She has been prescribed medications for her mental issues and takes them as prescribed, which she stated helps her. *Id.* at 36-37.

4

Plaintiff's workplace anxiety was a result of being around both supervisors and coworkers, but more so supervisors. Tr. at 40. She did not previously work around the public at her last job. *Id.* She stated that at her prior factory job, she often broke down in tears and needed to take months off from work at a time. *Id.* at 41-43. Making phone calls also increased her anxiety. *Id.* at 46-47. When asked whether she could do a job where she did not have to interact with people at all, Plaintiff answered that she did not know because she had never been in such a position. *Id.* at 47.

The ALJ asked one hypothetical question to the VE consistent with his RFC finding, including the following relevant limitation:

> The work should be low stress, which I further define as low production quotas and where possible the work should involve being in a work environment such as night time office cleaning work where there are very few, if any, supervisors or employees as I stated earlier, such as being responsible for routine maintenance and cleaning…

Tr. at 50. The VE identified a single occupation: cleaner/custodian, Dictionary of Occupational Title Code 323.687-014. *Id.* The VE noted that there are typically about 623,000 jobs of that sort in the United States, "but given the additional restriction of after hours sort of no people contact [the VE] would decrease that number to approximately 160,000." *Id.*

The ALJ addressed Plaintiff, stating that "[t]here's always going to be somebody in the area but you heard the description of the job, you know, like in an office building. Does that frighten you?" *Id.* at 52. Plaintiff responded affirmatively. *Id.* The ALJ then replied, "Because of what, the people, I'm trying to take the people factor out of there," to which Plaintiff responded that she understood and that it was "really terrifying" for her. *Id.*

### III.     **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On April 12, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 9-22. The ALJ stated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. *Id.* at 14. He further found that Plaintiff had not engaged in substantial gainful activity since July 28, 2014, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the following severe impairments: anxiety disorder, depression, and agoraphobia. *Id.* at 15. The ALJ then indicated that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After considering the record, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except for the following limitations: limited to unskilled work with an SVP of one or two, which are jobs learned in 30 days or less requiring little judgment; limited to work that is routine and should not involve arbitration, mediation, or negotiation; should not be responsible for the welfare of others; work should be low-stress, which is defined as low production quotas; and limited to work where there are few supervisors or employers. Tr. at 16.

The ALJ then stated that Plaintiff was unable to perform any past relevant work. Tr. at 20. He further found that Plaintiff was a younger individual age 18-49 on the alleged date of disability, has at least a high school education, and is able to communicate in English. *Id.* at 21. The ALJ noted that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled," whether or not the Plaintiff has transferable job skills. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff can perform. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 28, 2014 through the date of his decision, April 12, 2018. *Id.* at 22.

### IV.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and

6

     416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6thCir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without

the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   LAW AND ANALYSIS

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly considered the State agency psychological consultant opinions of record regarding Plaintiff's mental functioning. ECF Dkt. #s 14, 19. Plaintiff avers that the State agency psychological consultants, Drs. Karen Terry and Patricia Kirwin, opined that Plaintiff suffered from moderate limitations in social functioning. ECF Dkt. #14 at 10-11. The ALJ afforded "some weight" to these opinions and found that they were not restrictive enough because they "did not give [Plaintiff's] complaints of agoraphobia and difficulties with social interaction adequate consideration." *Id.* at 11 (citing tr. at 19). The ALJ went even further and found that Plaintiff experienced a marked limitation in the functional domain of interacting with others. *Id.* (citing tr. at 15, 60, 88). Plaintiff points out that despite finding Plaintiff to be more limited than what Drs. Terry and Kirwin found, the ALJ's RFC was less restrictive because it did not include a time limitation in interacting with others. ECF Dkt. #14 at 11 n.3; #19 at 2. Thus, Plaintiff concludes that the ALJ's RFC finding conflicts with the medical opinions, requiring the ALJ to explain why the opinions were not adopted. ECF Dkt. #14 at 9, 12; #19 at 2. For the following reasons, the undersigned recommends that the Court find that the ALJ properly considered the medical opinions of record and, although the undersigned questions whether the ALJ provided substantial evidence due to internal inconsistencies, any error constitutes harmless error.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. § 404.1545(A)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. §§ 404.1545(c); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009); SSR 96-5p, 1996 WL 374183, at *5. SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, a need for a structured living environment, and work evaluations. *Id*. As Plaintiff correctly pointed out, SSR 96-8p also states: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at *7; ECF Dkt. #14 at 9.

State agency consultants are highly qualified specialists and experts in Social Security disability evaluation. SSR 96–6p, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). An ALJ is not required to explain why he favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006). In addition, ALJs are not bound by the findings of state agency psychologists, "but they may not ignore these opinions and must explain the weight given

9

to the opinions in their decisions." SSR 96-8p. The regulations require an ALJ to "consider" all the medical opinions in the record as well as "evaluate" them considering the factors of 20 C.F.R. §§404.1527(c) and 416.927(c). 20 C.F.R. §§ 404.1527(b),(c), 416.927(b)(c). These factors include the examining relationship; the treatment relationship, including the length of the treatment relationship and the frequency of examination as well as the nature and extent of the treatment relationship; supportability; consistency; specialization; and other relevant factors that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The undersigned cannot determine if the ALJ's decision was based upon substantial evidence because the ALJ made contradictory findings in his RFC analysis. Nonetheless, the ALJ adequately considered the opinions of State agency psychological consultants Dr. Terry and Dr. Kirwin. Tr. at 19. The ALJ considered both opinions and remarked, in relevant part, that both consultants concluded that Plaintiff had limitations regarding social interaction. *Id.* Specifically, the ALJ noted the following:

> She [referring to Dr. Terry and, by agreement, Dr. Kirwin] said [Plaintiff] retained the ability to perform work in a more solitary setting[,] did not require collaborative efforts with others for task completing, did not require her to interact with the general public, required no more than infrequent and superficial interaction with coworkers and supervisors, and did not require her to work in close proximity to large groups of people. She said [Plaintiff] should not be required to have constant direct over-the-shoulder supervision and correction/criticism needed to be presented in a constructive manner.

*Id.* (citing tr. at 54-79). The ALJ afforded the opinions of the State agency consultants "some weight." *Id.* He explained that they are acceptable medical sources who reviewed Plaintiff's medical records and accounted for her complaints of difficulties with social interaction and stress management. However, the ALJ went on to say that "they did not give [Plaintiff's] complaints of agoraphobia and difficulties with social interaction adequate consideration," and therefore he only afforded their opinions some weight. *Id.* This reasoning appears to make reference to a finding the ALJ made earlier in his decision at step two of the analysis. *See id.* at 15.

At step two of the sequential process, the ALJ found that Plaintiff has a "marked limitation"[2] in interacting with others. Tr. at 15. For support, the ALJ cited to Plaintiff's statements that she was very nervous, anxious, frustrated, and unsure of herself in public. *Id.* She also stated that bullies were everywhere. *Id.* However, Plaintiff also reported that she would watch movies, go out to lunch, go on bike rides, and go to amusement parks. *Id.* (citing tr. at 224-32). The ALJ relied more heavily on her testimony at the hearing, particularly with regard to her agoraphobia, in concluding that Plaintiff has a marked limitation in interacting with others. *Id.*

Plaintiff contends that the ALJ's RFC finding contradicted the medical opinions of the State agency consultants, Drs. Terry and Kirwin. ECF Dkt. #s 14, 19. Therefore, Plaintiff contends that the ALJ was required to explain this contradiction, pursuant to SSR 96-8p, and since the ALJ failed to provide an explanation, remand is required. SSR 96-8p ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator *must explain* why the opinion was not adopted."). The undersigned recommends that the Court find this argument is without merit. The ALJ's RFC finding does not outright *contradict* the State agency opinions, but rather, it simply *omits* the specific limitations about which they opined. "[A]n ALJ is not required to adopt every facet of an opinion, even when assigning it great weight." *Maki v. Comm'r of Soc. Sec.*, No. 1:18 CV 798, 2019 WL 3082309, at *7 (N.D. Ohio July 15, 2019); *see Reeves v. Comm'r of Soc. Sec.*, 618 Fed.Appx. 267, 275 (6th Cir. 2015) (unpublished) ("Although the ALJ gave great weight to [a physician's] opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record."); *Smith v. Colvin*, No. 3:13-CV-00776, 2013 WL 6504681, at *11 (N.D. Ohio Dec. 11, 2013) ("[T]here is no requirement that an ALJ accept every facet of an opinion to which he assigns significant or substantial weight. Rather, the relevant regulations require only that an ALJ explain the general weight given to the opinions of nonexamining physicians."); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) (unpublished) (An ALJ "is not required to

---

[2] The ALJ defined "marked limitation" to mean "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Tr. at 15.

recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *see also Martin v. Comm'r of Soc. Sec.*, 658 Fed.Appx. 255, 259 (6th Cir. 2016) (unpublished) ("Martin protests the ALJ's lack of explanation as to why Martin's marked impairment in interacting with the general public—as found by Dr. Joslin—and his moderate to marked impairment in his ability to sustain concentration—as found by Dr. Rutledge—were not explicitly incorporated into Martin's RFC. But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions."). Thus, the undersigned recommends that the ALJ's RFC finding does not *contradict* the medical opinions about social interaction.

What is more concerning is the ALJ's own internal contradictions. The aforementioned excerpts from the ALJ's decision strongly support that the ALJ found that Plaintiff had severe limitations concerning social interaction. For further support, and similar to the ALJ's reasoning of the State agency consultants, the ALJ afforded Dr. John Davis's opinion "little weight" because "his opinion did not consider [Plaintiff's] agoraphobia and difficulties with social interaction." Tr. at 20; *compare* tr. at 19 (noting that the State agency consultants "did not give [Plaintiff's] complaints of agoraphobia and difficulties with social interaction adequate consideration"). Dr. Davis opined that Plaintiff had moderate limitation in her ability to interact appropriately with others. *Id.*

However, the ALJ's RFC finding only included a social interaction limitation that Plaintiff is limited to work where there are few supervisors or employers. Tr. at 16. Plaintiff correctly points out that this only addresses one of the six social interaction limitations that the State agency consultants provided[3], which the ALJ found was not comprehensive enough. ECF Dkt. #14 at 11-12; #19. Thus, the RFC finding was confusingly *less* restrictive than the opinions of

---

[3] The State agency consultants limited Plaintiff to: (1) retained the ability to perform work in a more solitary setting; (2) did not require collaborative efforts with others for task completing; (3) did not require her to interact with the general public; *(4) required no more than infrequent and superficial interaction with coworkers and supervisors*; (5) did not require her to work in close proximity to large groups of people; and (6) should not be required to have constant direct over-the-shoulder supervision and correction/criticism needed to be presented in a constructive manner. Tr. at 63, 91-92.

12

Drs. Terry and Kirwin. The RFC finding even appears to contradict the ALJ's own conclusion that Plaintiff was markedly limited in interacting with others.

Despite the internal inconsistent findings in the ALJ's decision, any error would be harmless because the VE considered no public contact in the hypothetical presented to him by the ALJ. "An agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 541 546–47 (6th Cir. 2004) (emphasis added) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir.1983)); *see also Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L. Ed. 2d 532 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

At the hearing, the ALJ presented the following hypothetical to the VE:

> The work should be routine, in other words, no change up in plans. The work should not involve any arbitration, mediation or negotiation. The work should never involve being responsible for the care or welfare of others. The work should be low stress which I further define as low production quotas and *where possible the work should involve being in a work environment such as night time office cleaning work where there are very few if any supervisors or employees* as I stated earlier such as being responsible to routine maintenance and cleaning.

Tr. at 49-50. The VE testified that the hypothetical individual would be able to perform the job of cleaner/custodian. *Id.* at 50. The VE noted that there are typically about 623,000 jobs of that type, but then reduced the numbers of jobs to approximately 160,000 nationally to account for the additional restriction of "after hours sort of no people contact." *Id.* Thus, while the ALJ did not include the "no people contact" restriction in his RFC finding, the VE included such a restriction in his opinion that the job of an "after hours" cleaner existed in significant numbers in the national economy. *Id.* The ALJ relied on this finding at step five of the sequential process, citing the 160,000 figure as well. *Id.* at 21-22. Accordingly, the undersigned recommends that the Court find that the ALJ's error in not including a stronger social interaction limitation in his RFC finding was harmless error.

13

**VII. CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: February 4, 2020                     */s/George J. Limbert*
                                                                                GEORGE J. LIMBERT
                                                                                UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).